IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SUSAN BOWDEN,

    Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

No. CIV S-03-1671 LKK CMK

FINDINGS & RECOMMENDATIONS

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). For the reasons discussed below, the court recommends plaintiff's appeal be denied.

///
///
///
///
///
///

1

I. <u>Factual and Procedural Background</u>

In a decision dated September 23, 2002, the Administrative Law Judge ("ALJ") determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found that plaintiff is insured for benefits through December 31, 2001; plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; plaintiff has an impairment or combination of impairments considered severe; plaintiff has been diagnosed with chronic cervical musculoligamentous strain and C6-7 disc bulge with right C7 foraminal stenosis; plaintiff's medically determinable impairments do not meet or medically equal one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

impairments in Appendix 1; plaintiff's allegations are not totally credible; plaintiff has the residual capacity to perform a full range of light work activity on a sustained basis; plaintiff is precluded from prolonged use of her arms for work overhead and from prolonged neck flexion/extension; plaintiff's impairments do not prevent her from performing her past relevant work; and that plaintiff was not under a "disability" as defined by the Social Security Act at any time through the date of the ALJ's decision.

Plaintiff contends that the ALJ failed to consider a combination of all her impairments, failed to properly credit the opinions of her treating physician, failed to properly credit the plaintiff's statements regarding her impairments and symptoms, and failed to establish that plaintiff could perform her past relevant work or any other work in the national economy.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. See id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

Severity of Additional Impairments

Plaintiff contends that the ALJ's severity analysis at step two, is erroneous. It is well-established that at step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). "The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is 'not severe.'" Smolen, 80 F.3d at 1290. 20 C.F.R. § 416.921 provides:

> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b) Basic work activities. When we talk about basic work activities, we mean abilities and aptitudes necessary to do most jobs. Examples of these include -
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers, and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. See Bowen v. Yuckert, 482 U.S. 137,

1  153 (1987).  "An impairment or combination of impairments can be found 'not severe' only if
2  the evidence establishes a slight abnormality that has 'no more than a minimal effect on an
3  individual's ability to work.'"  Smolen, 80 F.3d at 1290.  An overly stringent application of the
4  severity requirement would improperly deny benefits to claimants who meet the statutory
5  definition of disabled.  See Corral v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).  Finally, it is
6  important to recognize that the step-two inquiry is but a de minimis screening device to dispose
7  of groundless claims.  See Smolen, 80 F.3d at 1290.

8        Plaintiff contends that the ALJ failed to consider all of her back impairments and
9  her adjustment disorder with anxiety and borderline intellectual functioning.  (Pl.'s Mem. at 15.)
10  In particular, plaintiff contends the ALJ failed to include her sensory cervical radiculopathy
11  involving the C7 root on the right secondary to mild disc disease with neuoro foraminal
12  narrowing at C7 on the right, chronic cervical-thoracic myofascial pain syndrome, and
13  discogenic cervical pain.  Plaintiff argues that this was a mistake because these impairments
14  were the source of her chronic pain, and the ALJ should not have used step two to eliminate
15  them.

16        However, no matter what plaintiff's alleged impairment, plaintiff had the same
17  complaints with regard to her neck and back.  Therefore, by considering plaintiff's complaints of
18  neck and back pain, the ALJ effectively considered any impairment plaintiff may have had from
19  medical evidence described above.  (AT 133, 142, 154-160, 196, 220.)  Thus, the ALJ did
20  consider plaintiff's chronic neck and back pain.  (AT 21, 25-26.)

21        With respect to plaintiff's mental impairments, the ALJ found that plaintiff's
22  adjustment disorder and borderline intellectual functioning caused only slight restrictions in
23  plaintiff's daily living and social functioning.  See Social Security Ruling 85-28; Corraro v.
24  Shalala, 20 F.3d 943, 949 (9th Cir. 1994); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).
25  The record indicates that the plaintiff has not sought any medical treatment for her mental health.
26  Plaintiff's GAF score was 65, demonstrating she has only mild mental limitations.  See

Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).  Plaintiff did not meet her burden of demonstrating that she had a severe mental impairment.  See 20 C.F.R. § 404.1512(c).  Therefore, the ALJ's implicit finding that plaintiff's other impairments were slight is supported by substantial evidence and should be upheld.

Treating Physician's Opinion

Next, plaintiff contends that the ALJ should not have rejected the opinions of her treating physician, Dr. Shapiro.

In part, the weight given to medical opinions depends on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  See Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  If the contradicting opinion comes from a non-treating physician and is based on objective clinical tests, it must be viewed as substantial evidence.  See Magallanes, 881 F.2d at 751.

The ALJ need not give weight to conclusory opinions supported by minimal

6

1  clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's

2  conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.

3  　　　　　In the present case, Dr. Shapiro, plaintiff's treating physician, opined that the

4  plaintiff was unable to lift more than one pound, walk/stand for more than three hours, sit for

5  more than three hours, stoop, or crouch.  (See AT 274.)  Dr. Shapiro found that the plaintiff's

6  ability to reach, handle, feel, push and pull were also impaired.  (See id.)  The ALJ, however,

7  rejected these findings.

8  　　　　　The ALJ gave specific reasons for rejecting Dr. Shapiro's assessment of

9  significant functional limitation.  In particular, the ALJ noted Dr. Shapiro's assessments were not

10 supported by medical findings, his assessments appeared to be based on plaintiff's subjective

11 complaints, his assessments were inconsistent with the extreme limitations he found, and his

12 assessments appeared to be based on his desire to help the plaintiff with litigation rather than

13 treatment.  (See AT 22.)

14 　　　　　Plaintiff contends that Dr. Shapiro's chart notes, diagnoses, and test results

15 support his assessment that she has significant functional limitations.  (Pl.'s Mem. at 17.)  This

16 court notes that Dr. Shapiro typically reported that the plaintiff had "good cervical and thoracic

17 motion, minimal discomfort," and "mild pain."  (AT 208, 210, 213-216, 270-272.)  These

18 findings are contrary to Dr. Shapiro's extreme opinion he formed in August 2002 previously

19 described.  Moreover, Dr. Shapiro's August 2002 assessments were made in a conclusory

20 fashion, on a pre-printed form.  (See AT 273-275.)  Therefore, the ALJ properly rejected Dr.

21 Shapiro's August 2002 conclusory medical opinion based on lack of objective medical evidence.

22 See Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

23 　　　　　Next, plaintiff contends that the ALJ's finding that Dr. Shapiro's assessments

24 were based merely on the plaintiff's subjective complaints was erroneous.  (Pl.'s Mem. at 17.)

25 The ALJ can properly reject a treating physician's opinion which is based on a plaintiff's

26 subjective complaints.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Fair v.

Bowen, 885 F.2d 597, 605 (9th Cir. 1989). The ALJ found that because Dr. Shapiro did not refer to any objective findings, his assessments appeared to be based upon the plaintiff's recitation of her subjective complaints. (AT 22, 273-275.) Notably, Dr. Shapiro did not answer the question regarding "medical conditions that support assessment" that was located next to each of plaintiff's listed impairments on the pre-printed form. (See AT 274.)

The ALJ also found that there was no evidence that Dr. Shapiro examined the plaintiff at the time he completed his August 2002 assessment. The plaintiff contends that this is irrelevant. This fact, however, is quite relevant. Dr. Shapiro's August 2002 assessment is drastically different than his previous findings. (See AT 210-221, 270-272.) Dr. Shapiro may have based his August 2002 assessment on the functional capacity test performed on July 9, 2002. (At 273-279.) However, Dr. Shapiro did not state this in his report. Moreover, the report from the functional capacity test is on a preprinted form with little explanation for the findings, which further indicates that plaintiff was not fully examined by Dr. Shapiro. (Id.) Therefore, the ALJ properly found that Dr. Shapiro did not examine the plaintiff at the time he made his August 2002 assessment and that Dr. Shapiro's findings were based on plaintiff's subjective complaints.

Next, the ALJ found that Dr. Shapiro's August 2002 assessment was contrary to the weight of plaintiff's medical record. The ALJ noted that plaintiff's chiropractor, Dr. Mays, assessed that the plaintiff is limited to light work, not involving repetitive motion of the neck and back. (See AT 22.) Social Security defines light work as including the ability to lift no more than twenty pounds with frequent lifting or carrying of objects weighing up to ten pounds. See 20 C.F.R. § 404.1567(b). In addition, this category requires a good deal of walking, standing, or sitting with some pushing or pulling. See id. To be able to perform a full range of light work, the plaintiff must be able to perform substantially all these activities. See id. However, as previously stated, Dr. Shapiro opined that the plaintiff is unable to lift more than one pound, walk/stand for more than three hours, sit for more than three hours, or stoop and crouch. (See AT 274.)

Plaintiff contends that Dr. Shapiro's assessments are not contradicted by Dr. Mays' findings because Dr. Shapiro's August 2002 assessments simply qualify Dr. Mays' findings. (Pl.'s Mem. at 18.) Plaintiff contends further that Dr. Mays' use of the term "light work" should not be confused with the Social Security definition. Dr. Mays does not state in his report that he is using a different definition of "light work." Moreover, the ALJ determined that Dr. Mays' opinion was consistent with that of Qualified Medical Examiner, Dr. Carloni. Dr. Carloni opined that the plaintiff should not perform constant repetitive work above shoulder level or work requiring prolonged extension of her neck. (See AT 22-23, 134.) The ALJ included plaintiff's neck and back limitations in his findings.[2] (See AT 26.)

The ALJ found that Dr. Shapiro's assessments were also contradicted by Dr. Ansel's comprehensive and detailed report. (See AT 22.) Dr. Ansel, also a Qualified Medical Examiner, opined that the plaintiff should avoid very heavy work, prolonged use of her arms overhead, and prolonged use of neck flexion and extension. (See AT 202.) Dr. Ansel's opinion, by itself, constitutes substantial evidence because it rests on an independent examination of the plaintiff. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Next, plaintiff contends that the ALJ improperly rejected Dr. Shapiro's assessments because the assessments were made at her attorney's request. (Pl.'s Mem. at 19; AT 22.) "[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). "Evidence of the circumstances under which the report was obtained and its consistency with other records, or findings could, however, form a legitimate basis for evaluating the reliability of the report." Id.

---

[2] Plaintiff notes that the ALJ stated that an assessment from a chiropractor "wouldn't be of any use at all" and that "they take them away in ambulances from the chiropractor to bring them to a real doctor." (AT 309, 312.) These comments are derogatory. Nevertheless, the ALJ afforded Dr. Mays' assessment some weight. An ALJ is not required to accept a chiropractor's opinion. See 20 C.F.R. § 404.1513(d); Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), modified on other grounds, 947 F.2d 341, 358 (9th Cir. 1991).

In the present case, the ALJ found Dr. Shapiro's assessments inconsistent with the rest of the record. (See AT 22.) Thus, the ALJ did not reject the report because plaintiff's attorney requested it. Instead the ALJ rejected the report because it was inconsistent with other records, which is a legitimate basis for rejecting a report. See id.

In sum, the ALJ's assessment of the plaintiff's physical and mental impairments and the impairments emanating from them is both free of legal error and supported by substantial evidence.

Plaintiff's Credibility

If credibility is critical, the ALJ must make an explicit credibility finding. See Albalos v. Sullivan, 907 F.2d 871, 873-874 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility findings to be supported by a "specific, cogent reason for the disbelief").

In evaluating whether the applicant's complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restriction. See id. at 345-47. Also, the ALJ may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct may also be relevant. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).

///

These are specific reasons for finding plaintiff's subjective complaints less than credible. See id. Although the plaintiff's testimony should not be rejected "solely because the objective medical evidence does not support the severity of her impairment," the ALJ can properly reject the plaintiff's testimony by providing specific, clear and convincing reasons, that her testimony was not credible. See Bunnell, 947 F.2d at 346; see also Light, 119 F.3d at 792 (upholding ALJ's finding that a claimant generally lacks credibility as a permissible basis for rejecting claimant's testimony).

Here, plaintiff contends that her testimony regarding pain, postural and manipulative limitations, and her inability to maintain concentration were all supported the by the record and, as a result, could not be discredited. (Pl.'s Mem. at 20.) The ALJ, however, provided other proper nonmedical reasons for rejecting plaintiff's testimony. The ALJ found that the amount of medication the plaintiff takes and her level of daily activity both demonstrate that her pain is controlled enough to enable her to perform "light work." (AT 23.) Here, the ALJ noted that the plaintiff participates in daily activities that are consistent with basic work-related activities, including doing laundry, changing the sheets, vacuuming, going grocery shopping every two weeks, and walking. The plaintiff testified that she used to go bike riding and that it was her best activity. (See id.) The ALJ noted that there was no evidence of "disuse muscle atrophy or wasting commonly associated with severe pain." (Id.) Also, the ALJ found that there was no evidence in the record that the plaintiff had significant attention, concentration, or cognitive deficits from pain. (See id.) The ALJ properly considered plaintiff's daily activities and levels of pain in rejecting pain testimony. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Thus, the ALJ's reasons are supported by substantial evidence in the record and his decision should be upheld. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Plaintiff's Past Relevant Work

Lastly, plaintiff contends that the ALJ failed to establish that she could perform her past relevant work, or any work, in the national economy. (Pl.'s Mem. at 22.) At step four,

the Commissioner must determine whether the plaintiff has the residual functional capacity to perform her past relevant work. See 20 C.F.R. 404.1520(e)-(f). Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

Plaintiff contends that had the ALJ considered her treating physician's and chiropractor's opinions she would definitely be precluded from her past work. Here, the ALJ properly relied on plaintiff's own description of her past job duties in determining that she could return to her past relevant work as a clerical worker, sales associate, and telephone answerer. (AT 25, 87, 103, 106, 108, 110, 286-288; see also Sanchez v. Secretary of Health and Human Serv., 812 F.2d 509, 511 (9th Cir. 1987); Mathews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(plaintiff's description of his job duties is highly probative)). These jobs are considered "light work" and involve lifting up to twenty pounds, and standing, walking, and sitting intermittently. (Id.) The ALJ determined that "[plaintiff's] minor limitations in her inability to engage in a prolonged use of her arms for overhead work and avoidance of prolonged neck flexion/extension, do not significantly reduce the base of light work." (Id.) The ALJ also based his determination that the plaintiff is able to perform "light work" on plaintiff's Work History Report, Disability Report, testimony, and earnings record. (AT 25.) Therefore, the ALJ's finding that the plaintiff could return to her past relevant work was proper and should be upheld.

Conclusion

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment or remand be denied; and

2. The Commissioner's cross motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   August 29, 2005.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE